UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY CICHOCKI, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )     Civil No. 12-cv-10441-NMG |
| | ) |
| BANK OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION TO DISMISS (DOC. NO. 44)

June 24, 2013

SOROKIN, C.M.J.

Defendant Bank of America seeks dismissal of the second Amended Complaint filed against it by the pro se plaintiffs, Timothy Cichocki and Y. Dolly Hwang.  Doc. Nos. 44, 45. The Court previously dismissed two earlier complaints filed by the plaintiffs in this action, finding such complaints failed to comply with the relevant pleading requirements under the Federal Rule of Civil Procedure.  Doc. Nos. 15, 26, 38.  Although the plaintiffs' latest attempt to remedy the defects present in their previous pleadings has brought their complaint into compliance with Rule 10, it has not incorporated sufficient factual allegations to state any plausible claim for relief against Bank of America.  As such, I recommend that the motion be ALLOWED, and the amended complaint be DISMISSED with prejudice.

I.    BACKGROUND[1]

Seventeen years ago, the plaintiffs purchased a condominium at 31 Pinckney Street in

---

[1]The facts recited herein are drawn from the Amended Complaint, Doc. No. 39, and the documents attached thereto or expressly incorporated therein.

Boston.  Doc. No. 39 at ¶ 6; Doc. No. 45-2 at 2.  In 2006, when the original mortgage on the condominium was nearly paid in full, the plaintiffs took out a new mortgage to help finance construction expenses for a house the plaintiffs were building in Rehoboth, Massachusetts.  Doc. No. 39 at ¶ 6.  The plaintiffs chose to obtain a fifteen-year, $270,000 mortgage from Bank of America.  Id.  They subsequently refinanced, executing a new fifteen-year mortgage in the amount of $285,564 on May 19, 2008.  Doc. No. 45-2.  The mortgage contained the following relevant provisions:

> 1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**. . . . Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.
>
> \*        \*        \*
>
> 9.  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**.  If . . . Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument . . . . Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Doc. No. 45-2 at 4-5, 9.

The loan documents also included a Condominium Rider, which the plaintiffs signed.  Id. at 17-19.  The Rider, which was expressly incorporated into the plaintiffs' mortgage, id. at 3, included the following language:

> Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the [Condominium Project's] Constituent Documents.
>
> \*        \*        \*

If Borrower does not pay condominium dues and assessments when due, then

2

Lender may pay them.  Any amounts disbursed by Lender under this paragraph . . . shall become additional debt of Borrower secured by the [Mortgage].  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

B[y signing below], Borrower accepts and agrees to the terms and covenants contained in this Condominium Rider.

Id. at 17-19.

The plaintiffs' dispute with Bank of America is an offshoot of a lengthy conflict between the plaintiffs and their condominium association.[2]  In early 2009, the plaintiffs objected to approximately $4,000 in assessments levied against them by the association, refusing to pay the "fraudulent" assessments.  Doc. No. 39 at ¶ 24; Doc. No. 45-1.  Thereafter, an attorney representing the association contacted Bank of America to notify it of the alleged debt and the plaintiffs' refusal to satisfy it.  Doc. No. 39 at ¶ 24; Doc. No. 45-1.  After requesting and receiving written confirmation of the debt, which by that time amounted to $6,452.17 (including interest and counsel fees), Bank of America paid it and deducted the amount from the plaintiffs' escrow account.  Doc. No. 39 at ¶¶ 21, 24.  Upon learning of the payment, the plaintiffs wrote to Bank of America disputing the validity of the debt and requesting that the bank initiate a criminal investigation of their condominium association.  Id. at ¶ 25; see Doc. No. 49-1.  Bank of America responded to the plaintiffs "by advising them to file [a] lawsuit against [the attorney] and [the] condo association" to recover the disputed assessment.  Doc. No. 39 at ¶ 25.  The plaintiffs sent additional letters to the bank repeating their objection to the disputed escrow transaction, but Bank of America provided no additional response.  Id. at ¶ 22.

---

[2]This conflict was described in more detail in the first two iterations of the plaintiffs' complaint.  See Doc. No. 1 at 4-6; Doc. No. 19-1 at 3-5.

Meanwhile, Bank of America adjusted the plaintiffs' monthly payment amount to reflect the additional debt (i.e., the $6,452.17) and notified the plaintiffs of the new payment amount. Id. at ¶¶ 21, 30.  The plaintiffs refused to pay the new amount, and instead continued to send monthly payments in the amount due before the disbursement to the condominium association. Id. at ¶¶ 20, 30.  Bank of America returned the plaintiffs' payments to them, as they were less than the new monthly payments the bank required, and eventually initiated the non-judicial foreclosure process in 2010.  Id. at ¶¶ 18, 20, 30.

On March 8, 2012, the plaintiffs sued Bank of America.  Doc. No. 1.  Bank of America moved to dismiss their pro se complaint, arguing it failed to "satisfy the minimum pleading requirements" under the Federal Rules.  Doc. No. 6 at 1.  The District Judge agreed and dismissed the complaint in a margin order dated August 8, 2012.  Doc. No. 15.  The order permitted the plaintiffs to file an amended complaint, but warned that the plaintiffs were required to "comply with Federal Rules of Civil Procedure 8(a) and 10."  Id.  In September 2012, the plaintiffs sought permission to file a revised complaint.  Doc. No. 19.  Although the District Judge noted the proposed revision was "below par under Rule 8," he allowed the plaintiffs to file it and noted Bank of America could file "a Motion for a More Definite Statement or some other motion, if appropriate."  Doc. No. 26.

Bank of America did move to dismiss the revised complaint, which was nearly identical to the original one, raising the same concerns regarding the plaintiffs' failure to allege sufficient facts to state any claim against the bank (as opposed to the condominium association or its counsel).  See generally Doc. No. 29.  During a February 8, 2013 status conference, the District Judge allowed Bank of America's motion and once again dismissed the plaintiffs' complaint

after hearing argument from both parties.  Doc. No. 38.  In doing so, the District Judge permitted the plaintiffs time to file a second amended complaint, reminded them that such a pleading would need "to state the facts in support of any claim that they make," "urged [the plaintiffs] to obtain counsel," and directed the Clerk to provide the plaintiffs with a Lawyer Referral Form. Id.

On February 28, 2013, the plaintiffs, still acting pro se, filed an Amended Complaint and Jury Demand.  Doc. No. 39.  Unlike their previous two complaints, this pleading presents the plaintiffs' claims using numbered paragraphs and more clearly identifies the statutes or legal theories underlying each claim.  It also contains new sections which describe the legal framework the plaintiffs suggest is relevant to their causes of action.  Id. at ¶¶ 7-17.  Those causes of action are: (i) wrongful foreclosure and breach of the mortgage; (ii) unfair and abusive practices in violation of chapter 93A of the Massachusetts General Laws and the Federal Trade Commission Act, for initiating foreclosure without resolving an escrow dispute; (iii) negligence and a violation of the Real Estate Settlement Procedures Act ("RESPA") for failing to investigate the validity of the debt claimed by the condominium association; (iv) unfair and abusive practices for transforming a disputed escrow transaction into additional mortgage debt; (v) unfair and abusive practices for altering the ratio of capital and interest associated with the plaintiffs' mortgage payments; and (vi) violations of a Consent Judgment entered in the United States District Court for the District of Columbia and a Consent Order entered by the Comptroller of the Currency of the United States (collectively, "the Consent Orders"), both of which bind Bank of America and resolved judicial and administrative claims against it.  Id. at ¶¶ 18-41.  Copies of the documents identified in the final count are exhibits to the amended

complaint.  Doc. Nos. 39-1, 39-2.  As they did in their previous complaints, the plaintiffs seek approximately $2 million in damages.  Doc. No. 39 at 16-18.

Bank of America seeks dismissal of the amended complaint, this time with prejudice. Doc. No. 44.  It argues that, notwithstanding the plaintiffs' reorganization of the content of their complaint and the addition of "conclusory references to numerous consent orders, statutes, and rules," the amended complaint lacks sufficient factual support for the plaintiffs' claims, just as the previous two iterations of the complaint did.  Doc. No. 45 at 3.  The plaintiffs oppose the motion, which they characterize as "a clear act of abusing the judicial proceeding, and wasting the time and resources of the court in a desperate attempt to evade liabilities."  Doc. No. 49 at 1.

On May 28, 2013, the District Judge referred Bank of America's motion to the undersigned for a Report and Recommendation.  Doc. No. 50.  Because the plaintiffs have not meaningfully supplemented their factual allegations, as distinct from mere conclusory statements and legal argument, the motion to dismiss should be allowed.  Moreover, because the plaintiffs have had three opportunities to adequately plead their claims, and because admonitions from the District Judge regarding the relevant pleading standards and the advisability of securing legal representation have gone unheeded, dismissal with prejudice is warranted.

II.     STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court "must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiff[]."  Watterson

v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "[F]actual allegations" must be separated from "conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely a conceivable, case for relief." Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotations omitted). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)) (internal quotation marks omitted).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Id. at 679; accord Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III.   DISCUSSION

Each of the plaintiffs' six claims stems from their view that Bank of America wrongly

paid the condominium association's assessment upon receiving notice of the claimed liability from the association's attorney.  According to the plaintiffs, Bank of America was obligated to investigate further the validity of the assessment, particularly after the plaintiffs objected thereto.  Its failure to do so allegedly violated the terms of the mortgage, state law governing foreclosure procedures, state and federal law prohibiting unfair trade practices, the RESPA, and the Consent Orders (to which Bank of America was a party, but the plaintiffs were not).  If, however, Bank of America's actions were sanctioned by the terms of the mortgage, the plaintiffs' claims fail as a matter of law.

A.      The Plaintiffs' Amended Allegations and Claims

The amended complaint differs from the plaintiffs' previous pleadings in both form and substance, but it does not meaningful improve the viability of the plaintiffs' claims against Bank of America.  The following structural changes are apparent after comparing the present version with its previous iterations:

1.      The paragraphs are numbered, consistent with the requirements of Rule 10, and the statutes and/or legal theories underlying most of the six claims enumerated in the complaint are identified with greater specificity.  See, e.g., Doc. No. 39 at ¶¶ 21-22.  This change, however, has no bearing on the substance of the pleading.

2.      In a new section entitled "Background Statements of Federal Government and Home Mortgage Lenders," the plaintiffs provide a sort of overview of the purposes behind various federal laws pertaining to, and entities involved in regulating, home mortgages.  Id. at ¶¶ 7-8.  They call Bank of America "the largest home mortgage lender in America," note the circumstances surrounding the 2008 government bailout of banks, and quote

extensively from the Consent Orders.  Id. at ¶¶ 9-12.  None of these general allegations about the regulation of banks, or Bank of America's asserted role in the collapse of the housing market, render the plaintiffs' claims plausible, as they do not constitute specific factual assertions regarding Bank of America's conduct at issue in this action with respect to these plaintiffs.

3.      A new section entitled "General Allegations" also has been added.  The first paragraph thereof appears to be a continuation of the legal overview set forth in the preceding section.  Id. at ¶ 13.  The remainder serves as a general introduction to the plaintiffs' claims, making broad reference to Bank of America but lacking any specific factual allegations to illuminate the claims.  See id. at ¶¶ 14-17.[3]  Such conclusory statements cannot nudge the plaintiffs' claims "across the line from conceivable to plausible." Twombly, 550 U.S. at 570; see Juarez, 708 F.3d at 276.

4.      The plaintiffs have reduced the number of claims, from twenty in the previous iteration of the complaint, to only six.  Compare Doc. No. 39 at ¶¶ 18-41, with Doc. No. 19-1 at 8-11.  Nevertheless, the fact that the plaintiffs have pared down their claims does not render them any more adequately stated, as far as the underlying facts are concerned, than the claims in their previous pleadings.

5.      Finally, a "Statement of Impacts on the General Public" now appears before the demands

---

[3]For example, the plaintiffs allege "the defendant had engaged in a series of abusive and unfair home mortgage lending acts that began with egregious violations of RESPA regulations concerning the plaintiffs' mortgage escrow account in the spring of 2009, and from there, progressed into the unlawful commencement of foreclosing the plaintiffs' mortgage in the fall of 2010."  Doc. No. 39 at ¶ 14; see also id. at ¶ 15 (alleging "careless and irresponsible mismanagement . . . of [the plaintiffs'] mortgage escrow account"); id. at ¶ 16 (summarily alleging failure to comply with the Consent Orders "as applied to the plaintiffs").

9

for relief.  There, the plaintiffs assert that they "are unlikely to experience mortgage foreclosure" due to their healthy financial situation, and suggest that their own complaints about Bank of America represent a "current trend" by the bank in its handling of foreclosures and, therefore, "cr[ies] out for immediate actions to protect the interest of the public."  Id. at ¶¶ 42-44.  Like the other new sections, this portion of the amended complaint contains no new factual averments sufficient to rescue the plaintiffs' claims from dismissal.

As far as specific factual assertions directed at Bank of America's conduct are concerned, the amended complaint – although reorganized – fares no better than its predecessors.  The facts recited in the "Narrative" sections of the plaintiffs' previous complaints have been either eliminated (where those facts were related to the underlying dispute between the plaintiffs and their condominium association and its treasurer), or peppered throughout the paragraphs appearing beneath each individual claim.  See id. at ¶¶ 18-41.  Few new facts are included here that were not alleged in the previous complaints, and none of the new facts elucidate the plaintiffs' claims against Bank of America.  For example, in Count I, the plaintiffs offer new allegations regarding their own financial history, which has included "several home mortgages in five states" and no defaults in payments.  Id. at ¶ 19.  In Count II, besides a series of conclusory assertions about the wrongfulness of Bank of America's conduct (the same conduct that was described in previous versions of the complaint), see, e.g., id. at ¶ 21 (alleging "the defendant chose to abuse its power as a lender in transforming the disputed transaction into a fraudulent loan to the plaintiffs against the plaintiffs' will"), the plaintiffs allege that Bank of America "never once" responded to the plaintiffs' requests for a review of the relevant escrow transaction,

id. at ¶ 22.  This general assertion, however, is belied by the plaintiff's specific allegation in Count III that Bank of America did, in fact, respond with "a simple statement" advising the plaintiffs to sue the condominium association and its attorney over the contested assessment.  Id. at ¶ 25.

Count III also describes the circumstances under which Bank of America allegedly learned of and paid the disputed assessment.  Specifically, the plaintiffs allege the condominium association's attorney called a bank clerk working for Bank of America to discuss the unpaid assessment, the bank clerk requested written confirmation thereof, the attorney provided it (in the form of a copy of a letter previously sent to the plaintiffs requesting payment, and an updated accounting of what was owed, including legal fees), the bank clerk released the funds to pay the alleged debt, and the plaintiffs received notice of the transaction "[d]ays later."  Id. at ¶ 24.  The remainder of Count III consists of assertions regarding the standards governing escrow accounts and other legal conclusions.  See, e.g., id. at ¶ 26 (alleging "the defendant has no business in deciding what [is] to be paid out of the plaintiffs' account"); id. at ¶ 27 (characterizing the plaintiffs as "victims of a vicious fraud, and later, of the deplorable negligence of their own bank").

Count IV largely recites facts included in the previous complaints related to the condominium association's counsel, his "handsome" fee included in the assessment paid by Bank of America, and a subsequent (failed) "extortion[ate]" demand he directed to the plaintiffs. Id. at ¶ 28.  The plaintiffs also allege that Bank of America began characterizing the transaction as a payment from their escrow account only after the plaintiffs filed this action, id. at ¶ 29, and they accuse the bank of practices "that closely mimicked those of loan sharks," id. at ¶ 30.

Count V merely repeats the plaintiffs' previous assertions regarding a change in "the established ratio of capitals and interests of the plaintiffs' mortgage payments."  Id. at ¶¶ 31-33.  Finally, Count VI relies on the facts alleged throughout the rest of the complaint, along with the plaintiffs' view of the Consent Orders.  Id. at ¶¶ 35-41.

None of the alterations made by the plaintiffs in their amended complaint are sufficient to salvage their claims and defeat Bank of America's motion to dismiss.  In the end, the plaintiffs do not allege that their condominium association never imposed the disputed assessments against them; they contest whether the assessments were valid.  Assuming, for purposes of this motion, that the assessments were invalid, the plaintiffs appear to have legal claims against their association, its treasurer, and its attorney.  They have not, however, stated any claim against Bank of America.  Their own allegations establish that Bank of America received oral notice of an unpaid assessment levied by the plaintiffs' condominium association, followed by written confirmation of the assessment (and verification that a demand had been made on the plaintiffs for payment).  The information was provided by an attorney representing the condominium association.  See id. at ¶ 24; Doc. No. 45-1.  Under these circumstances, the terms of the plaintiffs' mortgage permitted Bank of America to do exactly what it did: to pay "condominium dues and assessments" after the plaintiffs failed to do so, to add the "amounts disbursed" as "additional debt . . . secured by" the mortgage, to demand payment of the new amount with interest, and to reject what it deemed partial monthly payments thereafter.[4]  See Doc. No. 45-2 at 17-19.  These actions are explicitly permitted by the mortgage and cannot, on their own, expose

---

[4]Contrary to the plaintiffs' suggestion, see Doc. No. 49 at 5, 7, the mortgage did not require the plaintiffs' agreement before Bank of America made such a payment, nor did it require new loan documents to be generated and signed under these circumstances.

Bank of America to civil liability.

Although the amended complaint is replete with conclusory statements regarding the wrongfulness of Bank of America's conduct, it is as devoid of specific facts supporting the plaintiffs' claims as the previous two pleadings were.  The plaintiffs' factual allegations, without more, "do not permit the court to infer more than the mere possibility of misconduct" by Bank of America.  Iqbal, 556 U.S. at 679.  As such, dismissal is warranted.[5]

      B.        Dismissal with Prejudice

The plaintiffs twice have been permitted to amend their complaint to bring it into compliance with the Federal Rules and to supplement their factual assertions regarding conduct by Bank of America (as opposed to individuals and entities not named as defendants here).  See Doc. Nos. 15, 26.  They have disregarded the District Judge's explicit admonition regarding the advisability of representation by counsel, Doc. No. 26, and largely ignored the flaws Bank of America identified with respect to both of their prior pleadings, see Doc. Nos. 6, 29 (presenting essentially the same arguments in support of dismissal with respect to both previous complaints as are made here).  Unlike the previous two complaints, which were dismissed without prejudice for failure to comply with Rules 8 and 10, dismissal of the current amended complaint is appropriate under Rule 12(b)(6) based on the plaintiffs' failure to state an actionable claim

---

[5]In addition, there appear to be problems with the merits of each of the plaintiffs' claims. See Doc. No. 45 at 7-11 (arguing the plaintiffs' admission that they failed to make their monthly payments in full after the amounts were modified to reflect to escrow transaction dooms a wrongful foreclosure claim; actions permitted by the mortgage contract cannot violate chapter 93A; the Federal Trade Commission Act does not permit private rights of action, nor do certain cited provisions of RESPA; the only deceptive acts alleged by the plaintiffs which caused them harm were performed by individuals other than Bank of America; regulations applicable to credit card accounts do not apply to a lender in the context of a mortgage; and the plaintiffs lack standing to enforce the Consent Orders).

against Bank of America.  Such a dismissal is "a final decision on the merits, and is thus with

prejudice."  <u>Foran v. Stryker Sales Corp.</u>, No. 10-cv-12187-RGS, 2011 WL 652778, at *1 (D.

Mass. Feb. 14, 2011) (citing <u>Acevedo-Villalobos v. Hernandez</u>, 22 F.3d 384, 388 (1st Cir.

1994)).  The plaintiffs have not sought leave to amend for a third time, and the Court sees no

point in permitting them to do so.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, I respectfully recommend that Bank of America's motion to

dismiss (Doc. No. 44) be ALLOWED, and the plaintiffs' amended complaint (Doc. No. 39) be

DISMISSED with prejudice.[6]

_____/s / Leo T. Sorokin_____
Leo T. Sorokin
Chief United States Magistrate Judge

---

[6]The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  <u>See</u> Fed. R. Civ. P. 72; 28 U.S.C. § 636(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  <u>See</u> <u>Keating v. Sec'y of Health & Human Servs.</u>, 848 F.2d 271 (1st Cir. 1988); <u>United States v. Valencia-Copete</u>, 792 F.2d 4 (1st Cir. 1986); <u>Scott v. Schweiker</u>, 702 F.2d 13, 14 (1st Cir. 1983); <u>United States v. Vega</u>, 678 F.2d 376, 378-79 (1st Cir. 1982); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603 (1st Cir. 1980); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).